# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY THELUSMA,<br><br>Petitioners,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | Case No. 1:26-cv-01443-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DENY MOTION FOR PRELIMINARY INJUNCTION, AND DIRECT RESPONDENT TO PROVIDE PETITIONER WITH BOND HEARING BEFORE IMMIGRATION JUDGE<br><br>(ECF Nos. 1, 16)<br><br>ORDER DENYING PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL<br><br>(ECF No. 15) |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

For the reasons set forth herein, the undersigned recommends granting the petition for writ of habeas corpus, denying Petitioner's motion for preliminary injunction, and ordering that Respondents provide Petitioner with an individualized bond hearing before an immigration judge at which the government must justify Petitioner's continued detention by clear and convincing evidence.

## I.

## BACKGROUND

Petitioner is a citizen of Haiti who was paroled into the United States at the Miami International Airport through the Haitian Humanitarian Program on April 30, 2024. Petitioner's

parole was valid until June 12, 2025. On August 24, 2024, Petitioner was granted Temporary Protected Status ("TPS"), which was to be valid until February 3, 2026. (ECF No. 1 at 6; ECF No. 10-1 at 12.[1])

On August 31, 2025, Petitioner was arrested and charged with attempted aggravated assault, terroristic threats, unlawful possession of a weapon, and possession of a weapon for unlawful purposes. On September 15, 2025, Petitioner was arrested and charged with contempt of court and criminal trespass. On November 6, 2025, Petitioner was arrested and charged with simple assault, criminal mischief, obstructing the administration of the law, and resisting arrest/eluding police. All charges are currently pending. (ECF No. 10-1 at 2–3, 12–13, 15–19.) A detainer was lodged with the Monmouth County Correctional Institution, and on November 7, 2025, Petitioner was placed into U.S. Immigration and Customs Enforcement ("ICE") custody. Petitioner's TPS was withdrawn based on his criminal history. (Id. at 3, 12, 13.)

On February 19, 2026, Petitioner filed the instant petition for writ of habeas corpus raising a prolonged detention due process claim. (ECF No. 1 at 12–22.) The Court "construe[d] the Petition as also raising a due process claim regarding Petitioner's re-detention and challenging the statutory authority for Petitioner's detention." (ECF No. 8 at 1.) On March 6, 2026, Respondent filed an answer. (ECF No. 10.) Subsequently, Petitioner filed a motion for temporary restraining order, which the Court denied as untimely. (ECF Nos. 12, 13.) On April 17, 2026, Petitioner filed a motion for preliminary injunction, which was referred to the undersigned. (ECF Nos. 16, 17.) To date, no traverse has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

### A.  Applicability of 8 U.S.C. § 1226(c)(1)(E)

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or

---

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings": 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). Here, Respondents assert that Petitioner is detained pursuant to 8 U.S.C. § 1226(c)(1)(E), which provides that the "Attorney General shall take into custody any alien who… (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). Section 1226(c) "specif[ies] that the Attorney General 'may release' one of those aliens '*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (emphasis in original).

Respondents argue:

> Petitioner is charged with inadmissibility under 8 U.S.C. 1182(a)(7)(A)(i)(I), which satisfies the requirement of subsection (i). Exh. 1. Petitioner's arrest for violation of section 2C:12-1(b)(1) of the New Jersey Revised Statutes satisfies the requirements of subsection (ii). Specifically, the statutory language for this offense applies when a person "[a]ttempts to cause *serious bodily injury* to another, or causes injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury." N.J. Stat. § 2C:12-1(b)(1) (emphasis added). This is a match for the language in § 1226(c)(1)(E), which prescribes mandatory detention when a noncitizen "is charged with, is arrested for . . . acts which constitute the essential elements of . . . any crime that results in death or *serious bodily injury* to another person." 8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added).

(ECF No. 10 at 3.)

"For purposes of paragraph (1)(E), . . . 'serious bodily injury' ha[s] the meanings given such terms in the jurisdiction in which the acts occurred." 8 U.S.C. § 1226(c)(2). Here, Petitioner was arrested and charged with *attempted* aggravated assault, a violation of N.J. Stat. Ann.

§ 2C:12–1(b)(1). A "person is guilty of aggravated assault if he '[a]ttempts to cause serious bodily injury to another,'" but "[a]ctual serious bodily injury need not occur." State v. Beeput, No. A-4241-10T2, 2012 WL 5896549, at *3 (N.J. Super. Ct. App. Div. Nov. 26, 2012) (quoting N.J. Stat. Ann. § 2C:12–1(b)(1)). Accord State v. Mukherjee, No. A-2450-23, 2025 WL 1341718, at *3 (N.J. Super. Ct. App. Div. May 8, 2025) (The "State must only prove 'the defendant[ ] purposely attempted to cause serious bodily injury to another.' If 'the defendant[ ] attempted to cause serious bodily injury, it does not matter whether such injury actually resulted.'" (alterations in original) (internal citations omitted) (quoting New Jersey Model Criminal Jury Charges, Aggravated Assault – Serious Bodily Injury (rev. Jan. 9, 2012))). As "[a]ctual serious bodily injury need not occur," Beeput, 2012 WL 5896549, at *3, Petitioner's arrest for attempted aggravated assault in violation of N.J. Stat. Ann. § 2C:12–1(b)(1) does not satisfy the requirement of 8 U.S.C. § 1226(c)(1)(E)(ii), which applies when a noncitizen "is charged with, is arrested for . . . acts which constitute the essential elements of . . . any crime that *results in* death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added). Accordingly, the undersigned recommends finding that Petitioner is not subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(E).

## B. Procedural Due Process

This Court previously "construe[d] the Petition as also raising a [procedural] due process claim regarding Petitioner's re-detention[.]" (ECF No. 8 at 1.) "We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

### 1. Liberty Interest

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause

protects." <u>Zadvydas</u> at 690. In <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

<u>Morrissey</u>, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. <u>Morrissey</u>, 408 U.S. at 482.

Relying on <u>Morrissey</u>, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. <u>See, e.g.</u>, <u>Doe v. Becerra</u>, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); <u>J.A.E.M. v. Wofford</u>, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); <u>J.C.L.A. v. Wofford</u>, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); <u>Qazi v. Albarran</u>, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); <u>Martinez Hernandez v. Andrews</u>, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); <u>Yang v. Kaiser</u>, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); <u>Maklad v. Murray</u>, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025). "Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States . . . have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying

the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." Rocha Chavarria v. Chestnut, No. 1:25-CV-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). See Anderson v. Chernut, No. 1:26-cv-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) ("Even though petitioner's parole authorization expired, petitioner maintains her liberty interest in continued release"); D.L.C. v. Wofford, No. 1:25-cv-01996-DC-JDP, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) ("[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his liberty interest does not expire along with his parole.") (collecting cases). Accordingly, the undersigned recommends finding that Petitioner has a protected liberty interest in remaining out of immigration custody.

    2. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *5 (E.D. Cal. Mar. 19, 2025)). "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" Sharan S.

v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *10 (E.D. Cal. Nov. 12, 2025) (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of providing a custody hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

On balance, the Mathews factors show that Petitioner is entitled to notice and a bond hearing and "[t]hat hearing should have occurred before petitioner was re-detained." Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8, 2025).

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty ...."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after

the event[,]" such as "executive urgency." (internal quotations omitted)).

Carmen G.C., 2025 WL 3521304, at *7.

At such a pre-deprivation hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk such that re-detention is warranted. See Carmen G.C., 2025 WL 3521304, at *7 ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

Based on the foregoing, Petitioner has demonstrated that he has a strong liberty interest in remaining out of custody, that the risk of erroneous deprivation will be meaningfully reduced by requiring notice and a hearing before a neutral decisionmaker, and that the governmental burden in providing such procedure is quite minimal. Accordingly, the undersigned recommends granting the petition on the construed due process claim challenging Petitioner's re-detention.[2]

**C. Appropriate Relief**

Courts in this district have taken differing approaches to the relief granted to petitioners who have been released, subsequently re-detained, and denied bond hearings in violation of due process. In some cases, the immediate release of the petitioner has been ordered. See, e.g., Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated

---

[2] In light of this conclusion, the Court declines to address Petitioner's prolonged detention claim.

reporting requirements four times); Rocha Chavarria, 2025 WL 3533606 (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera v. Albarran, No. 1:25-cv-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025) (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

Here, Petitioner was detained after he was arrested and charged with attempted aggravated assault, terroristic threats, unlawful possession of a weapon, possession of a weapon for unlawful purposes, contempt of court, criminal trespass, simple assault, criminal mischief, obstructing the administration of the law, and resisting arrest/eluding police. Accordingly, the Court recommends finding that a post-deprivation hearing is the appropriate remedy.

### D. Motion for Preliminary Injunction

In the motion for preliminary injunction, Petitioner asserts that he is entitled to relief under Zadvydas v. Davis, 533 U.S. 678 (2001). (ECF No. 16.) As Petitioner is not subject to a final order of removal, (ECF No. 16 at 3), release under Zadvydas is not warranted. See Yan-Ling X. v. Lyons, No. 1:25-CV-01412-KES-CDB (HC), 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025) ("*Zadvydas* dealt with a noncitizen who had been detained and never released following a final order of removal.").

### E. Motion to Appoint Counsel

Petitioner has moved for appointment of counsel. (ECF No. 15.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See, e.g., Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986); Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir. 1958). However, 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the

proceeding for financially eligible persons if "the interests of justice so require." To determine whether to appoint counsel, the "court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). In light of the Court's conclusion that Petitioner is entitled to habeas relief, the undersigned will deny Petitioner's motion for appointment of counsel.

### III.

### RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1.  The petition for writ of habeas corpus be GRANTED on the construed procedural due process claim challenging Petitioner's detention;

2.  Petitioner's motion for preliminary injunction (ECF No. 16) be DENIED;

3.  Respondents be directed to provide Petitioner with a bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), at which

    a.  "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," Singh, 638 F.3d at 1203, and

    b.  the immigration judge should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate

Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 29, 2026**                    /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE

11